**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

FREDERICK BANKS,

           Petitioner,

    v.

WARDEN R. THOMPSON,

           Respondent.

Civil Action
No. 25-16338 (CPO)

**OPINION**

**O'HEARN, District Judge.**

Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. (ECF No. 1). For the reasons stated in this Opinion, the Court will dismiss with prejudice Ground One for lack of jurisdiction and dismiss the remainder of the Petition without prejudice for Petitioner's failure to exhaust his administrative remedies.

## I.  BACKGROUND

This case arises from Petitioner's challenges to the validity and execution of his sentence. Petitioner is currently serving an 84-month term of imprisonment for violating the terms of his supervised release. (*See* ECF No. 31-8, at 2); *United States v. Banks*, No. 15-cr-168, ECF Nos. 1782, 1830 (W.D.P.A. July 2, 2025).

Petitioner raises four grounds for relief, arguing that: (1) the Bureau of Prisons ("BOP") "lacks jurisdiction" to detain him because the sentencing court lacked jurisdiction to revoke his supervised release; (2) the BOP failed to provide him with 64 months of prior custody credit from a prior revocation of supervised release; (3) the BOP failed to properly calculate his First Step Act ("FSA") credits and criminal history score; and (4) the BOP improperly set a payment schedule

under the Inmate Financial Responsibility Program ("IFRP") regarding prior criminal judgments. (*See* ECF No. 1, at 6–8).

As to exhaustion, Petitioner states that he did not complete the administrative remedy process. (*See* ECF No. 1, at 2). He argues that exhaustion is futile because the BOP failed to respond or obstructed his effort to seek administrative remedies and because "issues of statutory construction don't require exhaustion." (*Id.*).

According to BOP records, on September 18, 2025, Petitioner submitted a BP-8, related to Ground One, alleging that his detention was unlawful because his sentencing court lacked jurisdiction to revoke his supervised release. (ECF No. 31-3, at 3). On October 23, 2025, a BOP counselor responded that the BOP "would need an amendment from the court . . . to honor [his] request." (*Id.*). On November 14, 2025, Petitioner filed a BP-9 appealing that decision, and on November 26, 2025, the warden denied the BP-9. (ECF No. 31-1, ¶ 8). Petitioner did not appeal that decision. (*Id.*).

As to Ground Two, Petitioner submitted a BP-9 on September 19, 2025, seeking additional credit for time served on a prior revocation sentence, and the warden denied relief on October 2, 2025. (*Id.* ¶ 9). Petitioner appealed, filing a BP-10 with the BOP's regional office on October 27, 2025, and that appeal was pending at the time of the filing of the limited answer in this case, on January 6, 2026. (*Id.*).

For Ground Three, Petitioner submitted a BP-9 on October 3, 2025, challenging his FSA release date, and a BP-9 on October 8, 2025, seeking to correct his criminal history score.[1] (*Id.* ¶

---

[1] A prisoner's criminal history score is one component of the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") assessment under the FSA. *See generally* 18 U.S.C. § 3632(a); 28 C.F.R. § 523.40 *et seq.*

10). The warden denied relief on November 4, 2025, and October 24, 2025, respectively. (*Id.*) Petitioner did not appeal either denial. (*Id.*)

Finally, as to Ground Four, Petitioner submitted a BP-9 on September 2, 2025, contesting his IFRP payments, and the warden denied relief on September 30, 2025. (*Id.* ¶ 11).  Petitioner did not appeal that decision. (*Id.*).

The Petitioner filed the instant Petition[2] on September 30, 2025. (*See* ECF No. 1, at 9 (signing the Petition on said date)).  Respondent filed a Limited Answer opposing relief, (ECF No. 31), and Petitioner filed a Reply, (ECF No. 34).  In terms of relief, Petitioner seeks his release from custody or entry into prerelease custody, the recalculation of his criminal history score and FSA credits, and presumably, an order addressing his IFRP payments. (*See* ECF No. 1, at 11 (seeking among other things, "all warranted relief")).

## II.    STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).  If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v.*

---

[2] Although Petitioner filed some amended petitions, he requested to dismiss those petitions and to proceed with his original petition, (ECF No. 15), and the Court granted his request. (*See* ECF No. 20, at 1–2).

3

*Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

## III.    DISCUSSION

### A.  Jurisdiction

The Court will first address the issue of jurisdiction as it appears that the Court lacks jurisdiction under 28 U.S.C. § 2241 to hear Petitioner's first claim.  Under Ground One, Petitioner contends that the BOP "does not have authority to detain" him because his sentencing court "lacked subject matter jurisdiction to revoke [his] supervised release." (ECF No. 1, at 6).  Despite his arguments to the contrary,[3] Petitioner seeks to challenge the validity of his revocation sentence.

Generally, however, a person must challenge the validity of a federal conviction or sentence under 28 U.S.C. § 2255.  *See Jackman v. Shartle*, 535 F. App'x 87, 88–89 (3d Cir. 2013) (citing *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002)).  This is because 28 U.S.C. § 2255 prohibits a district court from entertaining a challenge to a federal conviction or sentence through § 2241 unless the remedy under § 2255 is "inadequate or ineffective."  *See* 28 U.S.C. § 2255(e).  More specifically, the "saving clause" in § 2255(e) states that:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such a court has denied him relief, unless it also appears

---

[3] Petitioner maintains that he is not challenging the validity of his sentence, only the BOP's "legal authority to hold [him] in unlawful custody." (ECF No. 34, at 4).  Petitioner's characterization of his claim is not controlling.  A determination that his custody is unlawful because the sentencing court lacked jurisdiction to revoke his supervised release, would necessarily require this Court to find that the sentencing court did not have jurisdiction to impose his sentence.  In other words, that the sentence was invalid.  Accordingly, the claim constitutes a challenge to the validity of his sentence, not its execution.

4

> that the remedy by the motion is inadequate or ineffective to test the
> legality of his detention.

However, § 2255 "is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of . . . § 2255." *Cradle v. U.S. ex rel. Miner*, 290 F.3d 536, 539 (3d Cir. 2002). Rather, "[i]t is the inefficacy of the remedy, not the personal inability to use it, that is determinative." *Id*. at 538. "The provision exists to ensure that petitioners have a fair opportunity to seek collateral relief, not to enable them to evade procedural requirements." *Id.* at 539 (citing *In re Dorsainvil*, 119 F.3d 245, 251–52 (3d Cir. 1997)).

In *Jones*, the Supreme Court "sharply curtail[ed] the use of the saving[] clause for collateral attacks under § 2241," and limited its use to "the unusual circumstances in which it is impossible or impracticable for a prisoner to seek relief from the sentencing court." *Parke v. Bergami*, No. 21-20385, 2023 WL 6619636, at *2 (D.N.J. Oct. 11, 2023) (quoting *Jones*, 599 U.S. at 474); *see also Polk v. Warden Allenwood FCI*, No. 19-3336, 2023 WL 8665979, at *2 (3d Cir. Dec. 15, 2023); *Ferguson v. Warden Fairton FCI*, No. 17-2819, 2023 WL 8295925, at *2 (3d Cir. Dec. 1, 2023). As an example, the Supreme Court explained that such circumstances include "the sentencing court's dissolution; [as] a motion in a court that no longer exists is obviously 'inadequate or ineffective' for any purpose." *Jones*, 599 U.S. at 474; *see id*. at 504 (J. Jackson, dissenting) (explaining that the "impossible or impracticable" standard effectively limits the saving clause to situations such as when the sentencing court "has burned to the ground or been carried away by a mudslide"). Additionally, "[t]he saving clause might also apply when it is not practicable for the prisoner to have his motion determined in the trial court because of his inability to be present at the hearing, or for other reasons." *Jones*, 599 U.S. at 475 (internal quotation marks omitted). Thus, post-*Jones*, the saving clause under § 2255(e) only "preserves recourse to § 2241

5

in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing court, as well as for challenges to detention other than collateral attacks on a sentence." *Id.* at 478.

Here, § 2255 is not inadequate or ineffective to raise Petitioner's challenge to his revocation sentence. Indeed, the claim that his sentencing court lacked jurisdiction is a type of claim specifically enumerated under § 2255. *See* 28 U.S.C. § 2255(a) (stating that a prisoner may move to vacate, set aside or correct a sentence that "was imposed [by a] court . . . without jurisdiction to impose such sentence"); *Capistrano v. Knight*, No. 23-2813, 2025 WL 1155945, at *4 (D.N.J. Apr. 16, 2025); *Osborne v. Ortiz*, No. 20-20561, 2022 WL 2067282, at *1 (D.N.J. June 8, 2022); *Samuels v. United States*, No. 20-6970, 2021 WL 194762, at *4 (D.N.J. Jan. 19, 2021). Nor has Petitioner otherwise met the "impossible or impracticable" standard to trigger the saving clause, *Jones*, 599 U.S. at 474, as his sentencing court, the United States District Court for the Western District of Pennsylvania, has not "burned to the ground or been carried away by a mudslide." *Id*. at 504 (J. Jackson, dissenting). Accordingly, this Court lacks jurisdiction under § 2241 to consider Ground One.

When a party files a civil action in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. The Court finds that it is not in the interest of justice to transfer this claim to the Western District of Pennsylvania, as it appears that that court has already denied the claim. *See United States v. Banks*, Crim. No. 15-168, ECF Nos. 1851, 1920 (W.D.Pa. 2025) (denying the claim by text order under docket entry 1920). However, this Court's decision does not prevent Petitioner from filing a § 2255 motion in the Western District of Pennsylvania on his own.

6

**B. Exhaustion**

Next, the Court addresses exhaustion as it appears that Petitioner has failed to exhaust his administrative remedies as to the remaining claims. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner may not ordinarily bring a § 2241 petition, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *E.g.*, *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies *before* petitioning for a writ of habeas corpus pursuant to § 2241." (emphasis added)).

Courts require exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761–62; *see also Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Nevertheless, exhaustion is not required where it would not promote these goals, such as where exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm" *Lyons*, 840 F.2d at 205; *see also, e.g.*, *Gambino*, 134 F.3d at 171 (finding that exhaustion is not required where petitioner demonstrates futility).

To determine whether a prisoner has exhausted his administrative remedies, courts look to the agency's applicable grievance procedure and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Pursuant to the BOP's administrative remedy program, an inmate must

7

generally attempt to informally resolve the issue by presenting it to staff through a BP-8 form. *See* 28 C.F.R. § 542.13. *See generally* 28 C.F.R. § 542.13(b) ("An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution."). If that fails to informally resolve the issue, then the inmate may submit a BP-9 form to the warden. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with the warden's response may appeal to the regional director with a BP-10, and an inmate who is dissatisfied with the regional director's decision may appeal to the general counsel in the central office, through a BP-11. *See* 28 C.F.R. § 542.15(a). An appeal to the general counsel is the final level of administrative appeal. *Id.*

Here, Petitioner concedes that he did not complete the administrative remedy process as to his claims. (ECF No. 1, at 3). Indeed, the record shows that he had just started the administrative process for Grounds Two and Four, in the weeks prior to filing this case. (ECF No. 31-1, ¶¶ 9, 11). Further, he did not start the administrative process as to Ground Three until *after* he filed this case. (*See id.* ¶ 10).

Petitioner now argues that he exhausted all available remedies because staff obstructed his efforts to avail himself of the administrative process. (ECF No. 34, at 1–3). The alleged obstructions, however, relate to his BP-10 and BP-11 appeals, which he initiated *after* he filed the instant § 2241 Petition. (*See id.*; ECF No. 31-1 ¶¶ 9–11). Absent an exception, a petitioner must exhaust his available administrative remedies *before* filing a § 2241 petition. *See, e.g.*, *Ogunlana* v. *Warden Allenwood*, No. 26-1064, 2026 WL 1209056, at *1 (3d Cir. May 4, 2026); *Muniz v. Zickefoose*, 460 F. App'x 165, 166 (3d Cir. 2012); *Moscato*, 98 F.3d at 760. As Petitioner filed

this case before he started the BP-10 or BP-11 process, it cannot be said that those appeals were, at the time he filed the case, unavailable.

Next, Petitioner argues that exhaustion is not required because his claims fall under the statutory interpretation exception. (*See* ECF No. 1, at 1; ECF No. 34, at 3).  He does not explain, however, how he believes these claims turn *solely* on issues of statutory interpretation. (*See* ECF No. 1, at 1; ECF No. 34, at 3).  For example, under Ground Two, Petitioner alleges that the BOP failed to credit him with time served on a prior revocation sentence, but adjudicating that claim necessarily focuses on an examination of his prior revocation terms and the BOP's jail-credit and sentence computations.  Similarly, Ground Three, which disputes the BOP's FSA credit and criminal history score calculations, depends on individualized factual determinations.  The BOP considers a myriad of inmate-specific factors in making those decisions. *See* 18 U.S.C. § 3632 (discussing FSA credits); 18 U.S.C. § 3624(g) (discussing prerelease custody); 28 C.F.R. §§ 523.40 *et seq*. (describing the procedures for earning and applying FSA credits).  Finally, Ground Four challenges Petitioner's IFRP payment obligations, and does not appear to involve statutory interpretation at all.  Rather, Petitioner argues that the BOP violated his due process rights because: (1) the payment obligations are based on criminal judgments that have been discharged, and (2) those judgments do not apply to gifts from family only to his "prison salary." (*See* ECF No. 1, at 8).

Ultimately, these claims "fit[] squarely within the parameters of the purposes of exhaustion." *Cf. Furando v. Ortiz*, No. 20-3739, 2020 WL 3264161, at *3 (D.N.J. June 17, 2020).

By filing this case before receiving an answer on his administrative remedies,[4] the Petition only speculates as to the basis for the BOP's decisions.

Without a developed administrative record, the Court cannot determine whether those decisions turn on issues of statutory interpretation, issues of fact, or mixed questions of law and fact.[5]  That uncertainty illustrates why administrative review is ordinarily required before judicial intervention. *See, e.g.*, *Chaparro v. Ortiz*, No. 20-5272, 2020 WL 4251479, at *5 (D.N.J. July 24, 2020) (noting the need to develop the factual record when the BOP's efforts are in dispute).

"Second, Petitioner could potentially obtain relief from the BOP without using judicial resources." *Furando*, 2020 WL 3264161, at *3.  As discussed above, Petitioner had just started, or had not yet begun, the administrative remedy process as to these claims. (*See* ECF No.  31-8, ¶¶ 8, 10–11).  He appears to have assumed that the BOP would fail to respond to his administrative efforts to seek remedies, but that is pure speculation.  The BOP could very well have granted the relief he sought. *See Shoup v. Shultz*, No.  09-585, 2009 WL 1544664, at *5 (D.N.J. June 2, 2009) ("Having no information as to what the decisions of these officials would be, this Court cannot find . . . [that] these decisions would be 'hypothetically illegal,' same as the Court cannot deem

---

[4] As to Ground Four, the Petitioner filed the Petition on the same day he received the Warden's response to his BP-9. (*Compare* ECF No. 31-1, ¶ 8, *with* ECF No. 1, at 9).  However, the Court will assume he filed the Petition before receiving the response, as the Petition states that the BOP "never provided [him] with an answer." (ECF No. 1, at 1).

[5] Even if Petitioner later received responses to certain administrative remedies during the pendency of this action, that does not alter the exhaustion analysis.  Exhaustion is assessed at the time the petition was filed, and a petitioner may not cure a failure to exhaust through post-filing administrative developments. *See, e.g.*, *Amirnazmi v. Scism*, No. 11-273, 2011 WL 5854579, at *6 (M.D. Pa. Nov. 21, 2011).  Further, had the case proceeded notwithstanding Petitioner's failure to exhaust, the Court and Respondent would have been forced to address these claims without the BOP's final determinations or properly developed administrative records.  The exhaustion doctrine exists, in part, to avoid that scenario.

the exhaustion process 'futile.'").  Finally, as Petitioner is confident that the BOP has made mistakes, the BOP should have had an opportunity to correct its own errors.

For all those reasons, the Court finds that requiring Petitioner to exhaust his administrative remedies would promote the goals of exhaustion, and that exhaustion was not futile in this case. Accordingly, the Court will not excuse Petitioner's failure to exhaust as to Grounds Two, Three, and Four, and will dismiss those claims without prejudice.

### IV.    CONCLUSION

For the reasons above, the Court will dismiss with prejudice Ground One for lack of jurisdiction and dismiss Grounds Two, Three, and Four for Petitioner's failure to exhaust his administrative remedies.  The dismissal as to the latter three claims is without prejudice to the filing of a new petition pursuant to 28 U.S.C. § 2241, under a new docket number, after Petitioner has exhausted his administrative remedies.  An appropriate Order follows.


Dated:  May 26, 2026


/s/ Christine P. O'Hearn_____
**Christine P. O'Hearn**
**United States District Judge**


11